IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Clifford Burke, Jr., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Resurgent Capital Services, L.P., )<br>f/k/a Alegis Group, L.P., and )<br>Sherman Financial Group, )<br>)<br>Defendants. )<br>) | Civil Action No. 6:06-0282-HFF-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion to dismiss and to compel arbitration. In his complaint, the plaintiff alleges that the defendants, Resurgent Capital Services, L.P. f/k/a Alegis Group, L.P. and Sherman Financial Group (collectively "Resurgent"), his former employer, failed to promote him because of his race and because he was regarded as having a disability, in violation of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964, as amended.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

**FACTS PRESENTED**

The plaintiff began working for Resurgent on March 29, 2004, as a recovery specialist. In conjunction with the beginning of his employment, the plaintiff signed an arbitration agreement, which provided that the parties agreed to settle all disputes and claims through arbitration. The agreement provides in pertinent part:

> This Agreement . . . is intended to provide the exclusive means of resolving all Disputes, as defined below, which may arise between them . . . . Disputes . . . include any claims of discrimination or harassment on the basis of age, race, national origin, religion, disability, sex/gender, color or citizenship.

(Def. reply, Gail Conway aff., ex. A at 1). The agreement further provides that it is to be enforced under the Federal Arbitration Act ("FAA"). *Id.* at 1.

In his affidavit, the plaintiff testified that the signature on the agreement appears to be his signature, and the date, March 29, 2004, is the date he started to work for Resurgent. He further testified that he signed many papers that day, and he does not believe that he was given a copy of the agreement. He claims he was never told by anyone with the company that he would be required to submit any employment dispute to binding arbitration, and the first he heard about the agreement was after he had filed the instant action (pl. resp. to m. to compel, ex. 1, pl. aff. ¶¶ 2-3).

## ANALYSIS

The FAA reflects "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Underlying this policy is Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation. *Hightower v. GMRI, Inc.*, 272 F.3d 239, 241 (4th Cir. 2001). Accordingly, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

In *Adkins v. Labor Ready, Inc.,* 303 F.3d 496 (4th Cir. 2002), the Fourth Circuit Court of Appeals noted the FAA's liberal federal policy favoring arbitration agreements. The court stated:

> The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an

2

>agreement in writing for such arbitration." 9 U.S.C. § 3. This stay-of-litigation provision is mandatory. A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview.

*Id*. at 500 (quoting *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir.2001)). The court further stated:

>In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

*Id.* at 500-501(quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir.1991)).

The plaintiff disputes the second element, i.e., the existence of a binding contract to arbitrate his claims against Resurgent. It is clear that "even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997). The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. The Act further mandates that in the event of an alleged failure, neglect, or refusal to arbitrate, the court must compel arbitration if it is satisfied that "the making of the agreement for arbitration . . . is not in issue." *Id*. §4. Whether a party agreed to arbitrate a particular dispute is to be decided by applying "'ordinary state-law principles that govern the formation of contracts.'" *Johnson v. Circuit City Stores*, 148 F.3d 373, 377 (4th Cir.1998) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). A party challenging the validity of an arbitration agreement may do so by challenging the underlying contract in which the agreement is

3

contained.  *See Interocean Shipping Co. v.  Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir.1972).  However, to challenge the validity of an arbitration agreement, or the underlying contract in which the agreement is contained, a party must submit sufficient evidence to raise a genuine issue for trial.  *See Doctor's Assocs., Inc. v. Distajo,* 107 F.3d 126, 129-30 (2d Cir.1997) ("As when opposing a motion for summary judgment . . . the party requesting a jury trial must 'submit evidentiary facts showing that there is a dispute of fact to be tried.'") (citation omitted); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir.1992) (same).

The plaintiff first argues that the agreement is unconscionable under state law and violates the implied covenant of good faith and fair dealing.  In South Carolina, unconscionability is defined as "the absence of meaningful choice on the part of one party due to one-sided contract provisions *together with* terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Munoz v. Green Tree Financial Corp.*, 542 S.E.2d 360, 365 (S.C. 2001) (citing *Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.*, 472 S.E.2d 242 (S.C. 1996)).

The plaintiff contends that "[n]othing about either the agreement itself or the process by which plaintiff's signature on the agreement was obtained in any way conspicuously point out to plaintiff the important substantive rights he was giving up when he signed this agreement along with numerous other papers he was required to sign on the day he reported for work" (pl. resp. to m. to compel 4).  He further contends that the fact the South Carolina Uniform Arbitration Act[1] requires that an arbitration provision be

---

[1]South Carolina Code Section 15-48-10(a) provides:
(a) A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract. Notice that a contract is subject to arbitration pursuant to this chapter shall be typed in underlined capital letters, or rubber-stamped prominently, on the first page of the contract and unless such notice is displayed thereon the contract shall not be subject to arbitration.
S.C. Code Ann. § 15-48-10(a).

4

conspicuously disclosed by typed or stamped notice in underlined capital letters shows the public policy of South Carolina with regard to unconscionability of an inconspicuous arbitration provision (pl. resp. to m. to compel 4 n. 4). As argued by the defendants, courts may not invalidate arbitration agreements under state law requirements that are applicable only to arbitration provisions (def. reply 4). "Because section 15-48-10(a) singles out arbitration agreements, it directly conflicts with section 2 of the FAA," and the FAA therefore displaces the state statute's notice requirement. *Soil Remediation Co. v. Nu-Way Environmental, Inc.*, 476 S.E.2d 149 (S.C. 1996). Further, the agreement is titled "Arbitration Agreement" and has a specific acknowledgment immediately above the plaintiff's signature that "by signing this Arbitration Agreement, both parties waive their right to a trial by court or jury" (def. reply, Gail Conway aff., ex. A at 2).

The plaintiff also argues that the defendants were required to explain the arbitration clause to him, instead of "simply silently present[ing] to him along with other employment papers in such a way that he has no memory of the agreement" (pl. resp. to m. to compel 3-4). However, South Carolina case law provides otherwise:

> A person who signs a contract or other written document cannot avoid the effect of the document by claiming he did not read it. A person signing a document is responsible for reading the document and making sure of its contents. Every contracting party owes a duty to the other party to the contract and to the public to learn the contents of a document before he signs it. One who signs a written instrument has the duty to exercise reasonable care to protect himself. "The law does not impose a duty on . . . [a party] to explain to an individual what he could learn from simply reading the document." This rule is subject to the exception that if the party is ignorant and unwary, his failure to read the document may be excused. However, our court very strictly construes this exception.

*Regions Bank v. Schmauch*, 582 S.E.2d 432, 440 (S.C. Ct. App. 2003) (internal citations omitted). *See also Munoz*, 542 S.E.2d at 365, n.6 (citing with approval the federal cases holding an agreement governed by the FAA will not be set aside on the grounds that the arbitration provision was not noticed or explained to the party signing it). The plaintiff does

5

not claim that he is "ignorant and unwary," and, therefore, the onus was on the plaintiff to read the agreement prior to signing it.

The plaintiff claims that the implied covenant of good faith and fair dealing was breached because a suitable forum for resolving the disputes was not provided in the agreement. Specifically, he argues that the following are missing from the agreement: (1) how an employee requests arbitration; (2) where or when the arbitration will take place; (3) the cost of the arbitration; and (4) who will bear that cost (pl. resp. to m. to compel 4-5). The agreement provides in pertinent part:

> The parties' arbitration shall be conducted in conformity with the procedures of the SOUTH CAROLINA UNIFORM ARBITRATION ACT AND RULES OF PLEADING, INCLUDING THE RIGHT OF DEMURRER AND SUMMARY JUDGMENT, DISCOVERY, AND OF EVIDENCE APPLICABLE TO CIVIL ACTIONS IN SOUTH CAROLINA COURTS.

(Def. reply, Gail Conway aff., ex. A at 2). South Carolina Code Section 15-48-20[2] sets out how a party makes an application to the court for an order compelling arbitration if the opposing party has refused to arbitrate. The defendants note that if an employee attempts to bring a dispute to arbitration within the normal grievance procedure of Resurgent and meets with opposition, he can then use this section to have the court order arbitration.

---

[2]Section 15-48-20 provides in pertinent part:
Proceedings to compel or stay arbitration.

(a) On application of a party showing an agreement described in § 15-48-10, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied.
***
(c) If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under subdivision (a) of this section, the application shall be made therein. Otherwise and subject to § 15-48-190, the application may be made in any court of competent jurisdiction.
***
S.C. Code Ann. § 15-48-20.

6

Section 15-48-50(a)[3] provides that the arbitrator appoints the time and place of the arbitration, and Section 15-48-110[4] provides that the fees and expenses of the arbitration will be paid as provided in the final award. Based upon the foregoing, it appears to this court that the basic terms of the arbitration agreement are adequately spelled out and do not indicate "inherent unfairness" as argued by the plaintiff (pl. resp. to m. to compel 5).

The plaintiff next argues that the agreement "gives defendants nearly complete control over the selection of arbitrators" (pl. resp. to m. to compel 5). The agreement provides:

> The Arbitrator shall be selected from a list of unbiased arbitrators obtained by the company from the American Arbitration Association or such other recognized Arbitration or

---

[3] Section 15-48-50 provides:

Unless otherwise provided by the agreement:

(a) The arbitrators shall appoint a time and place for the hearing and cause notification to the parties to be served personally or by registered mail not less than five days before the hearing. Appearance at the hearing waives such notice. The arbitrators may adjourn the hearing from time to time as necessary and, on request of a party and for good cause, or upon their own motion may postpone the hearing to a time not later than the date fixed by the agreement for making the a ward unless the parties consent to a later date. The arbitrators may hear and determine the controversy upon the evidence produced notwithstanding the failure of a party duly notified to appear. The court on application may direct the arbitrators to proceed promptly with the hearing and determination of the controversy.

(b) The parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing.

(c) The hearing shall be conducted by all the arbitrators but a majority may determine any question and render a final award. If, during the course of the hearing, an arbitrator for any reason ceases to act, the remaining arbitrator or arbitrators appointed to act as neutrals may continue with the hearing and determination of the controversy.

(d) Upon the request of any party or arbitrator, the arbitrators shall cause to be made a record of the testimony and evidence introduced at the hearing.

S.C. Code Ann. § 15-48-50.

[4] Section 15-48-100 provides: "Unless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award."

7

> Alternative Dispute Resolution service that provides arbitrators
> in the state in which the Dispute arises. The Arbitrator shall be
> selected from the list, using alternative strikes beginning with the
> claimant.

(Def. reply, Gail Conway aff., ex. A at 2). The plaintiff cites two cases in support of his argument, *Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999), and *Brown v. Ryan's Family Steak Houses, Inc.*, No. 2:03-2582, 2004 U.S. Dist. LEXIS 27456 (D.S.C. 2004). In *Hooters*, the Fourth Circuit Court of Appeals stated that the method of selecting an arbitrator provided in the arbitration agreement at issue in that case was "crafted to ensure a biased decisionmaker." *Hooters*, 173 F.3d at 938. The court noted:

> The employee and Hooters each select an arbitrator, and the
> two arbitrators in turn select a third. Good enough, except that
> the employee's arbitrator and the third arbitrator must be
> selected from a list of arbitrators created exclusively by Hooters.
> This gives Hooters control over the entire panel and places no
> limits whatsoever on whom Hooters can put on the list. Under
> the rules, Hooters is free to devise lists of partial arbitrators who
> have existing relationships, financial or familial, with Hooters
> and its management. In fact, the rules do not even prohibit
> Hooters from placing its managers themselves on the list.
> Further, nothing in the rules restricts Hooters from punishing
> arbitrators who rule against the company by removing them
> from the list. Given the unrestricted control that one party
> (Hooters) has over the panel, the selection of an impartial
> decision maker would be a surprising result.

*Id.* at 938-39. In *Brown*, the arbitration panel was assembled by EDSI, an arbitration group selected by Ryan's to handle all employee disputes. The EDSI system allowed employers to exert "tremendous control" over the makeup of two out of the three pools of arbitrators. Accordingly, the court held that the selection process skewed the groups, and hence the proposed arbitration process, far too much in management's favor. *Brown*, 2004 U.S. Dist. LEXIS 27456.

Unlike the employers in the cases cited by the plaintiff, in the present action, Resurgent has the responsibility of obtaining a list of arbitrators, but the list is actually compiled by a non-related third party (the American Arbitration Association ("AAA")). The

8

plaintiff has offered no evidence that the AAA or any other alternative dispute resolution ("ADR") service recognized in South Carolina is in any way biased toward Resurgent or employers in general. Further, the employee and employer have equal access to strikes in narrowing the panel to the actual arbitrator, much like the process of jury selection.

Based upon the foregoing, this court recommends that the motion to compel arbitration be granted.

The defendants have also moved for dismissal of the instant action. The FAA provides for a stay of proceedings in federal district courts when an issue in the proceeding is referable to arbitration. 9 U.S.C. §3. However, "if the Court finds that the entire claim is covered by an arbitration agreement and that no further controversies exist between the parties other than that one claim, the Court has the discretion to dismiss the claim in its entirety." *Davidson v. Becker*, 256 F.Supp.2d 377, 384 (D. Md. 2003) (citing *Adkins v. Labor Ready, Inc.*, 205 F.R.D. 460, 465 (S.D.W.Va.2001), aff'd, 303 F.3d 496 (4th Cir.2002)). In this case, it appears that all the issues raised in the complaint must be submitted to arbitration. Accordingly, this court recommends that the case be dismissed, as retaining jurisdiction and staying the action would not serve judicial economy.

s/William M. Catoe
United States Magistrate Judge

April 24, 2006

Greenville, South Carolina